ANSON RUDSDILL

*vs.*

. T. S. SLINGERLAND. .

A verdict will not be disturbed where there is evidence sufficient to sustain it.

The better general rule ·is, that in impeaching a witness by attacking his character, the inquiry in chief must be restricted to his credibility; that is, his general reputation for truth and veracity.

Where it is manifest that no injury has resulted from an erroneous ruling, such ruling will not be ground for a new trial.

Action of replevin, brought in the district court for Dodge county, for the recovery of a certain horse, &c. The complaint alleges plaintiff's ownership of the horse, a wrongful taking and detention by the defendant, the value of the horse, and claims damages, &c. The answer denies the allegations of the complaint, except as to the value of the horse. On the trial the evidence respecting the ownership of the horse was conflicting, and the question was passed upon by the jury, no exception to the evidence having been taken. A verdict was rendered for the plaintiff, and the defendant moved for a new trial, which was denied, and he appeals to this court. Exceptions were taken to the ruling of the court upon the admission of evidence, which are sufficiently stated in the opinion.

G. B. COOLEY, for Appellant.

· S. L. PIERCE, for Respondent.

Rudsdill v. Slingerland.

*By the Court.*—McMILLAN, J.—The plaintiff's ownership of the horse in question depended upon whether the defendant sold and delivered the horse to him. If the plaintiff was to pay the defendant one hundred and fifty dollars in the work on the granary, and the possession of the horse was delivered to the plaintiff by, the defendant at the time, the sale was valid; there was no uncertainty or want of mutuality in the contract, and the property passed by delivery at the time of the sale. The making of the contract of sale, its terms, and the question of the delivery of the horse, were all questions of fact for the jury; it appears from the case settled that there was evidence introduced by both parties on these subjects. The jury were no doubt instructed correctly as to the law upon the points involved, and by their verdict have found all the issues in favor of the plaintiff.

It did not appear to the court below, on the motion for a new trial, that the evidence was insufficient to sustain the verdict, and after examining the case as presented to us, we are of the opinion that there is sufficient evidence in the case to sustain the verdict.

The plaintiff having examined one Cynthia Norton as a witness upon his behalf, the defendant, for the purpose of attacking her credibility by impeaching her general character, called Henry Norton as a witness, and upon his being sworn asked him the following questions: 1. "Have you means of knowing, and do you know what is the general character of the witness Cynthia Norton in the neighborhood where she resides?" 2. "And if you know, is that character good or bad?" The plaintiff objected to each of the questions. The objections were sustained and the defendant excepted.

The defendant then modified the questions as follows: "Have you the means of knowing, and do you know the general character of the witness Cynthia Norton in the neigh-

hood where she resides, for truth and veracity ? " which was put without objection and answered, "I have. It is bad. I would not rely upon her oath." Several other witnesses were called to the same point and testified in a similar manner.

The word " character " in these several questions is evidently used in the sense of " reputation," and in this sense we consider it. Witnesses do not come voluntarily into court, but are brought there by the process of law. So far as this question is concerned, we must regard them as without interest in the litigation, and unbiased between the parties.

The only object in inquiring into the character of a witness, is to ascertain whether his statements, in themselves, are entitled to credit; if he is a truthful person, they are ; otherwise they are not. A witness, therefore, in coming into court would perhaps properly be considered as asserting his character for truthfulness to be good, and be charged with notice to defend it ; but we are unable to see why a witness should be held responsible to answer for, or be required to meet an attack upon his character in any other respect. A man may indulge in vices which destroy his general character, yet his truthfulness, and his reputation for truthfulness, may be unimpeachable. An inquiry in such a case as to his *moral* character would mislead, instead of assist, in arriving at the object of investigation, namely, his credibility ; it would in any event be an unnecessary attack and exposure of him to contempt and disgrace. Further, by such general inquiry as to character, the administration of justice would be hindered and delayed by collateral issues, and be more easily made the channel of venting private hatred and malice. For these, among other reasons, we think the better general rule is, that in impeaching the character of a witness in this mode, the inquiry in chief must be restricted to his credibility ; that is, his general reputation for truth and veracity.

Rudsdill v. Slingerland.

While there is great diversity in the books upon the question, there is abundant authority in support of the rule we have adopted.  *Jackson vs. Lewis*, 13 *J. R.* 504; *Bakeman vs. Rose*, 18 *Wend.* 146 ; *Commonwealth vs. Moore*, 3 *Pick.* 194 ; (*see note "A" to Commonwealth vs. Murphy*, 14 *Mass.* 387,) *Phillips vs. Kingsfield*, 19 *Maine*, 375 ; *State vs. Howard*, 9 *N. H.* 485 ; *Frye vs. Bank of Illinois*, 11 *Ill.* 367 ; *United States vs. VanSickle*, 2 *McLean*, 219 ; *Gass vs. Simpson*, 2 *Sumner*, 610 ; *Teese et al. vs. Huntington*, 23 *Howard* (*U. S.*) 2, *and authorities cited.*

But however the rule may be, it is manifest that no injury was done to the defendant in this case, since the witness to whom the rejected questions were put, subsequently answered that he knew the character of the witness, Cynthia Norton, for *truth and veracity;* that it was bad, and that he would not rely upon her oath.   In addition to this witness, several others testified in the same manner.

Where it is manifest that no injury has resulted from an erroneous ruling, it will not be ground for a new trial.

The order denying a new trial is affirmed.