## PALMER *v.* McCORMICK and others.

### *(Circuit Court, N. D. Iowa, W. D.* March 1, 1887.)

1. NON-RESIDENTS—SERVICE ON, BY PUBLICATION—NEWSPAPER WITH "PATENT INSIDE"—WHERE "PRINTED."
   In case of a local paper made up partly of a "patent inside," printed in another state, the paper is "printed" in the county where it is issued, within the meaning of a statute regulating publication of notice in actions against non-residents.

2. SAME—DEFENDANT COMING INTO STATE—EFFECT.
   The right to have service by publication on a non-resident defendant is not defeated by the fact that such defendant is in the habit of coming into the state as often as once in two weeks.

3. SAME—AFFIDAVIT—FORM.
   The affidavit for publication may, under the Iowa statute, be made by an attorney, and is not insufficient for not containing the words, "*The State of Iowa, —— County—ss.,*" if it clearly appears from it in what court, state, and county the case is pending.

4. MORTGAGE—FORECLOSURE—RELIEF IN EQUITY—MISFORTUNES OF MORTGAGOR.
   The fact that a mortgagor's failure to redeem from the mortgage, and from the foreclosure thereof, was caused by his misfortunes resulting from the "grasshopper plague," *held* not ground for relief in equity, as against a valid legal title under the foreclosure.

In Equity. Suit to redeem from mortgage, and to set aside decree of foreclosure. Demurrer to amended bill.

*J. W. Cory*, for complainant.

*Baily, Osborne & Peters*, for defendants.

SHIRAS, J. This cause has already been before the court upon a demurrer to the bill; the main question presented thereby being that of the jurisdiction of the state court to render a decree foreclosing a mortgage on realty within the jurisdiction of the court, the mortgagor being a non-resident of the state, and the only notice given of the pendency of the suit being by a publication made according to the provisions of the state statute. It was held that the court had jurisdiction to render such a decree, the proceeding being practically *in rem*. See opinion 28 Fed. Rep. 541. In support of the conclusion therein reached, see case of *Freeman* v. *Alderson*, 7 Sup. Ct. Rep. 165. Complainant has now amended his bill, setting up other facts which he claims defeat the decree of foreclosure, and the sale made in pursuance thereof; and to the bill as amended defendants again demur, and counsel have very fully discussed the questions thus presented.

It is averred in the bill that the notice of the pendency of the foreclosure suit in the state court was published in the Spirit Lake Beacon; that this paper was not wholly printed and published in Dickinson county, Iowa; that it was owned by J. H. Smith and A. B. Funk, who resided and had their only place of business at Spirit Lake, Dickinson county, Iowa; that one-half of said paper was printed in Dickinson county, and the other half in Illinois; or, in other words, the paper was made up of a "patent inside" printed in Chicago, the outside being printed at Spirit Lake, and from thence distributed to its patrons.

Section 2619 of the Code of Iowa provides that "the publication must be made by publishing the notice required in section 2599 of this chapter four consecutive weeks in some newspaper printed in the county where the petition is filed, and, if there be none printed in such county then in such paper printed at the next nearest county of this state; which paper shall, in either case, be determined by the plaintiff or his attorney." On behalf of complainant, it is contended that, under the provisions of this section, a paper gotten up as was the Spirit Lake Beacon is not printed in the county wherein it is issued, and that a notice published therein is not sufficient to give the court jurisdiction to render a decree of foreclosure; and in support of this contention is cited the case of *Cooke* v. *Tallman*, 40 Iowa, 133. All that is decided in that case is that the newspaper in which the publication is made must be printed in the county wherein the suit is brought, or, if there be none such, then the notice must be published in a newspaper printed in the next nearest county. What is meant by "printed" is not determined or discussed, and hence the case throws no light upon the point now presented.

Counsel for complainant does not in his argument enlighten us upon what he deems to constitute printing a newspaper, further than to aver that the statute is plain, clear, and concise, and needs no construction further than to hold that, if it is averred that the paper was partly or one-half printed in Dickinson county, and one-half in Illinois, that is equivalent to showing that it was not printed in Dickinson county. It is apparent, however, that the meaning of the statute is not so clearly expressed as to avoid the necessity of construction; or, rather, the statute does not attempt to define what is meant by the word "printed," as therein used, and its meaning is therefore to be sought in the light of the context and of the object and purpose of the statute.

When the sheets of paper, with the outside in blank, were received at the office of the Spirit Lake Beacon, it could not be fairly said that they were then parts of the newspaper known by the name of the Spirit Lake Beacon. That which conferred upon these sheets the characteristics which converted them into copies of the Spirit Lake Beacon was the work done at Spirit Lake. The statute does not declare that the whole of the work necessary to print the paper must be done in the county. The object of requiring the notice to be published in a paper printed in the county wherein the action is brought is to secure notice to the parties in interest, upon the theory that they will be more likely to see the paper published in the county wherein their property is situated, or, if they have an agent rep-

resenting their interests, he will probably be a resident of the county, and hence be more likely to see the notice thus published. Would the fact that the Spirit Lake Beacon had what is termed a "patent inside," printed in Chicago, in any way tend to defeat the object of publishing the notice therein? According to the theory of complainant, the notice in the foreclosure suit ought to have been published in a paper printed in Webster county, yet it is clearly apparent that parties interested in lands in Dickinson county would be much more likely to examine the columns of the Spirit Lake Beacon for notices affecting their interests than those of a paper printed in Webster county. It being true, then, that the owners of the Beacon lived at Spirit Lake, had their sole place of business thereat, and that the portion of the paper which identified it and made it the Spirit Lake Beacon was printed at Spirit Lake, it must be held that the paper known as the Spirit Lake Beacon was in fact printed in Dickinson county, and that the publication of the notice therein was a sufficient compliance with the provisions of section 2619 of the Code to confer upon the court jurisdiction of the foreclosure proceedings.

It is also averred in the amended bill that complainant, when the foreclosure suit was brought, resided in Minnesota, but that he was frequently in Dickinson county, coming to Spirit Lake as often as once in two weeks, and that it was therefore possible to obtain personal service upon him in the state. When the suit in foreclosure was filed, the complainant and his wife, who were the defendants therein, were residents of Minnesota, and, unless gifted with unusual foresight, it would be impossible for C. H. McCormick & Bro. to know whether these parties would or would not visit Iowa so that service could be had upon them. If, at the time the affidavit for publication was made, they were not in Iowa, service could not be made upon them in the state; and, as they were not residents of the state, the bare possibility that they might visit the state would not defeat the right to obtain service by publication.

It also urged that the affidavit for publication was made by an attorney, and is informal, because it does not contain the words, " *The State of Iowa, Dickinson County—ss.*" In the case of *Banta* v. *Wood*, 32 Iowa, 469, it is ruled that an attorney for the party has authority to make the requisite affidavit under the statute, and the form thereof clearly describes the case in which it is made, the court, state and county, in which the suit is pending, and the officer before whom it is made, to-wit, the clerk of the court. It cannot be held insufficient simply because it may be somewhat informal.

Counsel for complainant discusses at some length the question of the statute of limitations, as applicable to the right to redeem from a mortgage, or to the right to attack a void judgment. These questions do not arise in this case. The allegations of the bill fail to show that the decree of foreclosure is void, and, if it is not, then the sale based thereon was valid, and thereby the right to redeem from the mortgage was terminated, leaving simply the statutory time for redemption from the sale. By the express provisions of the statute, the complainant was allowed

two years in which to appear in the foreclosure suit, service being by publication only; yet he permitted this time to elapse, though he doubtless well knew that the decree had been entered. The bill fails to set forth any fact or facts which show that the state court had not jurisdiction of the foreclosure proceedings. The decree therein cannot be held void, and, being valid, the sale made in pursuance thereof ripened into a title, which has passed to the defendant Crandall. That the failure to redeem within the proper time was caused by the misfortunes of complainant, resulting from the "grasshopper plague," may be true, but that is a misfortune of which the consequences should not now be visited upon the defendants, who had no part or lot therein. Courts of equity cannot alone base a decree against a defendant upon a misfortune of the complainant. If a legal title is vested in a defendant, as there is in this cause, he cannot be deprived thereof, save upon some ground which affects him, or shows that it would be inequitable or unjust for him to retain his legal advantage against the superior equity of the opposing party.

The state of facts set forth in the bill as amended fails to show a ground for holding the title of the defendant void in law, and likewise fails to show a sufficient reason why a court of equity should interpose to defeat a title which has been allowed to remain undisturbed for eight years. The demurrer to bill is therefore sustained, and same will be dismissed at cost of complainant.